IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| DEBORAH SILVESTRO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 4:16-cv-1150-LSC |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

**I.  Introduction**

The plaintiff, Deborah Silvestro, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB"). Ms. Silvestro timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Silvestro was fifty-four years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has an eleventh grade education. (Tr. at 35-37.) Her past work experiences include employment as a sock folder, restaurant manager, and fast-food cook. (*Id.*) Ms. Silvestro claims that she became disabled on

1

May 31, 2013, due to osteoarthritis, carpal tunnel syndrome, hypothyroidism, thoracic outlet syndrome, irritable bowel syndrome ("IBS"), obesity, and diabetes. (Tr. at 15.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The

decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Ms. Silvestro meets the nondisability requirements for a period of disability and DIB was insured through the date of his decision. (Tr. at 15.) He further determined that Ms. Silvestro has not engaged in SGA since the alleged onset of her disability. (*Id.*) According to the ALJ, Plaintiff's osteoarthritis, carpal tunnel syndrome, hypothyroidism, history of thoracic outlet syndrome, IBS, obesity, and diabetes are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 18.) The ALJ did not find Ms. Silvestro's allegations to be totally credible, and he determined that she has the following RFC: light work as defined by 20 C.F.R. § 404.1567(b) except that she is limited to unskilled work with

no climbing of ropes, ladders, or scaffolds; no work at unprotected heights or with hazardous machinery; no more than concentrated exposure to extreme heat or cold; reasonable access to restroom facilities at the usual and customary breaks (reasonably defined as on the premises); and no more than frequent contact with co-workers, supervisors, and the general public. (Tr. at 19.)

According to the ALJ, Ms. Silvestro is unable to perform any of her past relevant work, she is "closely approaching advanced age," and she has a "high school education," as those terms are defined by the regulations. (Tr. at 25.) Because Plaintiff is limited in her ability to perform the full range of light work, the ALJ enlisted a vocational expert ("VE") and used the Medical-Vocational Rules as a guideline for finding that there are a significant number of jobs in the national economy that she is capable of performing, such as "Cashier 2," parking lot attendant, and toll collector. (*Id.*) The ALJ concluded his findings by stating that Plaintiff "has not been under a 'disability,' as defined in the Social Security Act, from May 31, 2013, through the date of this decision." (Tr. at 26.)

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the

Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Hecskler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

**III. Discussion**

Ms. Silvestro alleges that the ALJ's decision should be reversed and remanded for three reasons. First, Plaintiff believes that the ALJ improperly evaluated her treating physician's opinion. Second, Plaintiff contends that the ALJ did not afford proper consideration to her subjective complaints of pain. Third, Plaintiff contends that the ALJ incorrectly concluded that she could perform other jobs existing in significant numbers in the national economy.

**A. Treating Physician's Opinion**

Plaintiff contends that the ALJ improperly evaluated her treating physician's opinion. A treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). "Good cause" exists for an ALJ to not give a treating

physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record). The Court must also be aware of the fact that opinions such as whether a plaintiff is disabled, the plaintiff's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the physicians' evaluations of the plaintiff's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing the plaintiff's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c).

Dr. Christopher Jones treated Plaintiff since August 2010 for treatment of chronic upper extremity pain following a work injury in 2001. (Tr. at 310.) Dr. Jones wrote a letter in July 2013, on behalf of Plaintiff, noting that her condition is multifactorial and involves arthritic changes at her shoulders, elbows, wrists, hands, and fingers. (*Id*.) He also made note of her carpal tunnel syndrome and the thoracic outlet syndrome, for which she had previously undergone surgery. (*Id*.) He concluded that her pain had "worsened to the point that she has not been able to maintain employment as a cook and restaurant owner/manager." (*Id*.) Dr. Jones also noted that Plaintiff was "considering applying for disability as she is unable to use her hands for manual labor." (Tr. at 374.) However, the physician also noted that Plaintiff's nerve conduction velocity ("NCV") and electromyography ("EMG") tests were "negative other than mild carpal tunnel on the contralateral side to her work injury, [and] there were no findings on the right." (*Id*.) Additionally, although Plaintiff has been diagnosed with diabetes, Dr. Jones noted that "there was no evidence of a neuropathy on the nerve tests." (*Id*.)

The ALJ gave some weight to Dr. Jones's conclusion in the letter that Plaintiff could not perform her past work, but he also noted that he did not find any indication by Dr. Jones that she could not perform *other* work. (Tr. at 24.)

Plaintiff does not explain why she believes the ALJ should have given more weight to the opinion of Dr. Jones. The ALJ took into account Dr. Jones's statements that he "suspected" that Plaintiff's arthritis was "likely" affecting her upper extremity joints (tr. at 310) and accounted for these arthritic limitations in the plaintiff's RFC (tr. at 22-23.) While Plaintiff suggests that Dr. Jones's July 2013 assessment warranted limitations greater than those found by the ALJ, the Court does not find that suggestion supported by the record. An ALJ may discount any doctor's opinion, including a treating doctor's opinion, when the doctor fails to provide objective medical evidence to support his or her opinion or if the doctor's opinion is inconsistent with the record as a whole. *See* 20 C.F.R. § 404.1527(c); *Crawford*, 363 F.3d at 1159-60. As the ALJ observed, Dr. Jones consistently found Plaintiff had a normal gait, full range of wrist motion, only slightly diminished grip strength in the right hand, and her general muscle tone and strength were within normal limits with no spasticity or atrophy. (Tr. at 18, 21, 353, 357, 361, 365, 373, 377, 381, 388, 391, 394).

In sum, Dr. Jones never indicated one way or the other whether Plaintiff could perform *other* work, and even if he had affirmatively stated that she could not, substantial evidence would have supported the ALJ's decision to give that

conclusion little weight because it would not have been supported by Dr. Jones's own treatment notes.

## B. Credibility Determination

Plaintiff asserts that "the ALJ did not provide an adequate basis for finding less than credible the symptoms she alleged relating to pain, numbness, grip strength, and the frequency of her bathroom visits."

A plaintiff's subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer*, 395 F.3d at 1210 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). If the objective medical evidence does not confirm the severity of the plaintiff's alleged symptoms, but the plaintiff establishes that she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence

of the plaintiff's alleged symptoms and their effect on the plaintiff's ability to work. *See* 20 C.F.R. § 404.1529(c), (d); Social Security Ruling ("SSR") 96-7p.[1] The ALJ is permitted to discredit the plaintiff's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* SSR 96-7p ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." (*Id.*) (internal quotations omitted).

In this case, the ALJ determined that Plaintiff's osteoarthritis, carpal tunnel syndrome, and history of thoracic outlet syndrome could reasonably be expected to

---

[1] Effective March 28, 2016, SSR 16-3p superseded SSR 96-7p. *See* SSR 16-3p, 2016 WL 1237954, at *1 (amending the effective date of SSR 16-3p to March 28, 2016); 2016 WL 1119029, at *1 (implementing SSR 16-3p). However, the ALJ decided the instant case before the March 28, 2016, implementation date for SSR 16-3p; so SSR 16-3p does not apply to the ALJ's analysis here.

result in some pain and limitations. (Tr. at 22.) The ALJ also acknowledged Plaintiff's allegations of limitations related to sleep issues, fatigue, gastrointestinal symptoms, pain, carpal tunnel and arthritis symptoms, tingling fingers, numbness, lifting problems, anxiety, and inattention. (Tr. at 17, 19-24.) Ultimately, however, the ALJ stated that "due to contradictions between Plaintiff's reports and the objective examination findings of her treatment providers, diagnostic testing, and [her] failure to comply with her prescribed pain-management treatment regimen, the undersigned concludes that the severity of pain and numbness alleged is not fully credible." (Tr. at 22-23.)

Substantial evidence supports the ALJ's determination here. In reaching his conclusion, the ALJ considered the various medical opinions in the record. For example, Plaintiff was seen by three different certified registered nurse practitioners ("CRNPs") in 2013 and 2014—John Moore, Michelle Stuart, and Brooke Moody—and each noted that Plaintiff had "no anxiety, no depression, and no sleep disturbances." (Tr. at 19, 479, 490, 515.) CRNP Moore noted in September 2013 that Plaintiff's IBS had been acting up, but it usually ran its course within 3 to 4 days. (Tr. at 338.) Then, when Plaintiff saw CRNPs Moody and Stuart in March and May 2014, neither noted a loss of appetite, nausea, vomiting, diarrhea, abdominal pain, or frequent bathroom visits. (Tr. at 318, 323.) Similarly,

when Plaintiff saw Dr. Paul Megehee in September 2014, she complained about sore throat, sinus drainage, abdominal pain, nausea, and vomiting; but by the visit the following month, Plaintiff reported no gastrointestinal problems. (Tr. at 16-17, 476, 479.) Additionally, the ALJ analyzed records from Plaintiff's visits to North East Alabama Health Services in April, June, and September 2013, and March, May, and July 2014. The examiners noted no musculoskeletal pain on these visits. (Tr. at 21, 318-19, 323-25, 344, 346-51, 350, 479-80, 490.) The only exception was from the June 2013 visit, in which the examiner noted Plaintiff's report of having level "6" pain in her lower back that was the result of lifting boxes. (Tr. at 344-45.) The ALJ also gave great weight to the opinion of Robert Estock, M.D., a state agency psychiatric consultant, who determined that Plaintiff's anxiety disorder was not severe. (Tr. at 24, 82-83.) The ALJ also gave great weight to CRNP Michelle Stuart's findings of no musculoskeletal impairment, a normal gait, and rare reports of pain. (Tr. at 24, 318-319, 479-80, 485, 490.) Plaintiff has not specifically challenged the weight given by the ALJ to any of these medical sources, and they each support the ALJ's credibility determination. *See* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect of those symptoms . . . may have on your ability to work"). Furthermore,

the ALJ noted that while Plaintiff contended that her pain level was 8 out of 10 during her April 9, 2013, visit with her treating physician Dr. Jones, he noted that Plaintiff appeared comfortable and in no acute distress, her generalized muscle tone and strength was within normal limits for her age, no muscle spasticity or atrophy was appreciated, and her gait, coordination, and position sense were all within normal limits. (Tr. at 21-22, 353, 357, 361, 365, 373, 377, 381, 388, 391, 394). Finally, Plaintiff frequently told physicians that she was not in pain and she failed to follow directives with regard to treatment. (Tr. at 352, 354, 356, 358, 364).

Taking into account all of the objective medical evidence from Dr. Jones and other medical sources who saw Plaintiff about her gastrointestinal and other issues, the ALJ determined that Plaintiff's statements about the severity and consistency of her problems was not entirely credible. In any event, the ALJ included a limitation in the RFC to jobs that provided reasonable access to bathroom facilities at usual and customary breaks in order to accommodate Plaintiff's gastrointestinal symptoms. (Tr. at 23.) The Court finds no error in the ALJ's credibility determination.

### C. Jobs Existing in Significant Numbers in the National Economy

Plaintiff argues specifically that it would be burdensome on her to travel the 50-mile distance from her home to a parking lot attendant or toll collector job, two

of the other jobs existing in the national economy that the ALJ concluded that Plaintiff could perform given her limitations. This argument fails because in determining whether a claimant is disabled, the issue is not whether there is work near a claimant's home, but whether the claimant is capable of performing a job that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1566(c) ("We will determine that you are not disabled if your [RFC] and vocational abilities make it possible for you to do work which exists in the national economy, but you remain unemployed because of . . . [y]our inability to get work [or] . . . [l]ack of work in your local area.").

Plaintiff also argues that the parking lot attendant, toll collector, and cashier jobs would require her to reach up to handle change and that significant difficulties with fingering would undermine her ability to do the cashier job. However, these limitations were not listed in the RFC, and as discussed in the preceding sections, substantial evidence supports the ALJ's determination that Plaintiff could do light work with additional limitations. For example, the ALJ observed that Dr. Jones consistently found Plaintiff had normal gait, full range of wrist motion, and only slightly diminished grip strength on the right. (Tr. at 18, 20-21, 353, 357, 361, 365, 373, 377, 381, 388, 391, 394). Additionally, Dr. Jones often noted Plaintiff appeared in no acute distress and consistently noted Plaintiff's general muscle tone and

strength were within normal limits with no spasticity or atrophy. (Tr. at 21-22, 353, 357, 361, 365, 373, 377, 381, 388, 391, 394). As a result, Plaintiff failed to meet her burden of proving she could not perform the jobs the VE and ALJ identified. *See Doughty*, 245 F.3d at 1278 n.2.

## IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Silvestro's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON SEPTEMBER 1, 2017.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704